THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK FITZPATRICK, Appellant.

First Department, March 6, 1975.

*Peter Fleming, Jr.,* of counsel (*Caren S. Brutten* with him on the brief; *Curtis, Mallet-Prevost, Colt & Mosle,* attorneys), for appellant.

*T. James Bryan* of counsel (*Robert M. Morgenthau, District Attorney*), for respondent.

STEVENS, J. P. Defendant appeals from a judgment rendered in New York County, convicting him after a trial by jury of perjury in the first degree. The perjury charged was that

defendant swore falsely when he testified before a Grand Jury, investigating the activities of one Hugh Mulligan, that he had not cashed a check made out to H. Mulligan in the amount of $199.35. The People's case was based chiefly upon the testimony of Lieutenant Edward J. Killeen that he had seen defendant cash the check in Costello's Bar on February 7, 1969. In support of this testimony, the People produced the check and the bartender, Francis Hanley, who had allegedly cashed the check for defendant.

On this appeal, defendant urges that the evidence was insufficient as a matter of law in that the testimony of the prosecution witness Killeen was not corroborated as required by section 210.50 of the Penal Law; that the prosecutor's use of the witness Hanley's Grand Jury testimony at trial violated the provisions of CPL 60.35; and, that the trial court erred in its instruction on reasonable doubt.

Section 210.50 of the Penal Law, so far as pertinent, provides, "In any prosecution for perjury * * * falsity of a statement may not be established by the uncorroborated testimony of a single witness." The statute thus embodies the general rule in prosecutions for perjury, dating from the common law and almost universally applied in Federal and State courts, "that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment." (*Hammer* v. *United States,* 271 U. S. 620, 626; *Weiler* v. *United States,* 323 U. S. 606, 609–610.)

It will be noted that the statute refers to the uncorroborated testimony of a single witness. Where there is nothing except the testimony of a single witness, there is the so-called "oath against oath" because the defendant's oath, by his denial of guilt is, in effect, in evidence. (See *United States* v. *Wood,* 39 U. S. 430.) However, the testimony of a single witness, if supported by strong corroborative evidence, or "independent corroborating circumstances", establishing the falsity of the defendant's testimony, and the truth of the accusing witness, is sufficient to sustain a conviction for perjury. (See *People* v. *Doody,* 172 N. Y. 165, 172; *People* v. *Rosenburg,* 203 Misc. 22, 23; 70 C. J. S., Perjury, § 68). "Corroboration is a procedural device required in order to prove the crime of perjury and does not change the underlying material elements of the crime." (*Matter of Ruggiero,* 40 A D 2d 135, 136.)

The corroboration may be by direct or circumstantial evidence. It must, however, be sufficient to connect the accused with the perpetration of the offense and lead to the inference of

guilt. "It need not exclude to a moral certainty every hypothesis but guilt." (*People* v. *Fellman*, 35 N. Y. 159, 168), but it must tend " to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [witness] is telling the truth." (*People* v. *Fellman*, *supra*, p. 169.)

In the instant case, the production of the check itself with the name, amount and indorsement described by Killeen, with a notation on the back, " F. Fitz Steam J. Murray.", supported Killeen's testimony and tended to connect defendant with the commission of the crime. Hanley's testimony that the notation was in his handwriting and that he would put Costello's stamp on checks cashed by him, even though he stated he could not " recall ever cashing that check ", though he must have done so, all tended to establish the main fact, the falsity of defendant's testimony, and corroborated the truth of Killeen's testimony. Even the testimony and behavior of defendant need not be discounted as a possible corroborative factor (see *People* y. *Deitsch*, 237 N. Y. 300). The testimony of the other police officers as to Killeen's presence and actions, on that evening fully supported Killeen's testimony as to the time he entered Costello's and is of some significance in light of defense testimony to the contrary. On the total picture there was sufficient corroborating evidence to sustain a conviction for perjury.

Francis Hanley, a bartender at Costello's Bar on the night of February 7, 1969, the date of the cashing of the check, testified before the Grand Jury that he had cashed the check for defendant and the circumstances attendant thereon. At trial, his testimony regarding the events of the evening in question as they involved the defendant, consisted chiefly of assertions that he could not recall the events. Defendant thus urges that Hanley's testimony that he could not recall was a neutral statement and did not tend to disprove the People's case. Consequently, the permitted use of Hanley's Grand Jury testimony violated CPL 60.35, which forbids the use of a prior signed or sworn statement of a witness contradictory to his testimony at trial upon a material issue of the case unless such testimony tends to disprove the position of the party who called him. Evidence that the witness made such statement is not admissible, nor may such prior statement be used to refresh the recollection of the witness in a manner that discloses its contents to the trier of the facts.

Defendant calls attention to the Practice Commentary to CPL 60.35 (McKinney's Cons. Laws of N. Y., Book 11A) which notes

that a failure to recall or recollect is not testimony intrinsically unfavorable to the People or of the sort which tends to disprove their position. This, says defendant, clearly supports the contention that there was an impermissible use of Hanley's Grand Jury testimony.

In this case Hanley, called as the People's witness, did not rest upon the continued assertions that he could not recall, but voluntarily added, "That is my testimony before the grand jury, I don't recall, same thing", thereby seeking to bolster his trial testimony. Given this statement, the People, in all fairness were properly allowed an opportunity to impeach their own witness, for such statement tended to disprove the People's position. Additionally, there are other factors to be considered.

There was evidence that Hanley had assured Mulligan his testimony in effect would be that he could not remember. If the mere assertion by a witness that he "cannot remember" or "cannot recall" is conclusive and considered as establishing the fact, an unwarranted burden is placed upon the People which will frustrate a search for the truth. There should be reasonable latitude and a fair opportunity for explanation to determine if the failure to recall is a deliberate evasion or if it accurately represents the witness' power of recollection or recall.

In *People* v. *Sam* (71 Cal. 2d 194) the Supreme Court of California, construing and applying a statute similar to section 60.35 of the Penal Law, reversed a conviction for involuntary manslaughter. The court felt there was no impeachment value in statements the witness claimed to have forgotten, and asserted, "The right of impeachment does not exist where the witness states he has no recollection of the fact concerning which he is examined." (*People* v. *Sam, supra.,* p. 210.) The court concluded from the record that the witness truthfully had no recollection whatever of the incident in question. In the case before us the record leaves little doubt that the witness' alleged inability to recall was not an accurate representation.

But in *People* v. *Greene* (3 Cal. 3d 981), upon remand from the United States Supreme Court (399 U. S. 149), the Supreme Court of California, affirmed a conviction [earlier reversed by it] where, as here, there were elements of deliberate evasion. The court observed, "In normal circumstances, the testimony of a witness that he does not remember an event is not 'inconsistent' with a prior statement by him describing that event. (*People* v. *Sam* (1969), 71 Cal. 2d 194, 208–210 [77 Cal. Rptr. 804, 454 P. 2d 700] and cases cited.) But justice will not be promoted by a ritualistic invocation of this rule of evidence.

Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement [citation omitted], and the same principle governs the case of the forgetful witness." (*People* v. *Green, supra.,* p. 988.)

The court held that prior inconsistent statements of the witness were properly admitted for the purpose of impeachment under the California Evidence Code. Section 1235 of that code provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." Section 770 of the code merely requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial. While the California statute does permit prior inconsistent statements of a witness to be used as substantive evidence, it may also be utilized solely for purposes of impeachment as was done in *People* v. *Green* (*supra*).

Any prior statement by a witness on a matter of material importance to a case which is inconsistent with that witness' present testimony, and which weakens the proof of the party calling him, tends to disprove the position of that party. Our statute (CPL 60.35) merely expresses affirmatively the burden placed upon the party calling a witness where the witness' version of material events tends to disprove the position of the party whose witness he is. In such instances, impeachment by use of the witness' prior signed or sworn inconsistent statement is permitted. The California statute also permits use of such a statement for impeachment purposes but goes further and removes the barrier to its use as substantive evidence. Such use has been held not to violate the confrontation clause of the Sixth Amendment when certain conditions are met (*California* v. *Green,* 399 U. S. 149).

Hanley did not suffer from a total lack of recall. His memory became hazy and ineffectual when matters arose of material importance to the prosecution. He then could not recall events or his earlier Grand Jury testimony. That he was an unwilling witness became obvious. That fact alone, even coupled with a claimed inability to recall, might not have been sufficient to permit the use of the prior testimony for impeachment if there were not some indication that the witness falsified a lack of memory. Where a witness in good faith asserts a lack of memory of relevant events, there is no good reason to permit use of the prior testimony. If there is reasonable or substantial doubt as to the witness' good faith or the witness does not

deny the making of the prior statement or the truth thereof, but simply cannot recall, the Trial Judge's hands should not be tied by an absolute rule of exclusion. Discretion should be permitted and exercised (see *United States* v. *Insana,* 423 F. 2d 1165, 1170 [C. A. 2d, 1970] ). It was made clear to the trial jury that Hanley's Grand Jury testimony was not evidence in chief, but that its use was permitted solely for impeachment purposes.

Defendant's further contention that reversal is warranted because the court erred in its instruction on reasonable doubt is rejected. The charge must be read as a whole and not isolated as to a particular segment or sentence (*People* v. *Jones,* 27 N Y 2d 222). When so read, unless prejudicial error appears or there is manifest error in the instruction on the law, the verdict will not be disturbed. So read, we find no error.

The judgment should be affirmed.

NUNEZ, J. (dissenting). In my view the trial court committed reversible error in permitting the prosecutor to question Edward Hanley, a witness called by the People, concerning his prior testimony before the Grand Jury.

Defendant, an official of the steamfitters union, under a grant of immunity, had testified before a Grand Jury investigating bribery of labor officials. As part of its investigation, the Grand Jury sought to determine whether officials of the steamfitters union had received payments from one Hugh Mulligan so as to enable the latter to exert unlawful influence on the affairs of the union. The indictment charged that the defendant had falsely denied that on February 7, 1969, at Costello's Bar in New York City he had cashed a check from Afgo Engineering Corp., payable to H. Mulligan in the amount of $199.35. Hanley testified before the Grand Jury that he had cashed the check for the defendant on February 7, 1969 at Costello's Bar where he was a bartender. At trial, Hanley testified that he had no present recollection of the events of February 7, 1969 when the check in question was cashed. Had Hanley testified at trial as he did before the Grand Jury, he would have provided the requisite corroboration to establish that the defendant did cash the check as alleged in the indictment. Hanley was unable to either corroborate or to refute the testimony of Lieutenant Edward J. Killeen that the defendant had cashed the check. His testimony was completely neutral — he did not support the People's version of what had happened at Costello's Bar but, on the other hand, it did not " tend to disprove " it.

CPL 60.35 in its pertinent part provides: " 1. When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony * * * which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made * * * an oral statement under oath contradictory to such testimony. * * *

" 3. When a witness has made a prior signed or sworn statement contradictory to his testimony in a criminal proceeding upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing the recollection of the witness in a manner that discloses its contents to the trier of the facts." Defendant's specific objections to the reading of Hanley's testimony before the Grand Jury should have been sustained. The prosecutor was wrongfully allowed to confront Hanley with his prior testimony. This was in clear defiance of the legislative mandate quoted above. Hanley's testimony did not " tend to disprove " the prosecution's position. That this unlawful use of Hanley's Grand Jury testimony had a prejudicial impact on the trial jury is clearly established by the fact that the jury's notes and questions related to Hanley's Grand Jury testimony. Thus, we have not only a clear violation of CPL 60.35, but also clear evidence of its decisive impact on the jury's guilty verdict.

The two California cases cited by the majority are of no help to the People. Concededly, *People* v. *Sam* (71 Cal. 2d 194) supports our view. And the other cited case, *People* v. *Green* (3 Cal. 3d 981) is likewise supportive of our position. In the latter case the witness did not say that he did not remember the events leading up to and following the crucial moment when the marijuana came into his possession. He gave equivocal and inconsistent testimony. The California Supreme Court observed: " For the reasons stated above, we conclude that Porter's deliberate evasion of the latter point [when the marijuana came into his possession] in his trial testimony must be deemed to constitute an implied denial that defendant did in fact furnish him with the marijuana as charged. His testimony was thus materially inconsistent with his preliminary hearing testimony and his extra-judicial declaration to Officer Wade, in both of which he specifically named defendant as his supplier. Accordingly, the two prior statements of this witness were

properly admitted pursuant to Evidence Code section 1235."
(*People* v. *Green, supra,* pp. 988–989.)

Furthermore, the California statute, far from being similar, to the New York statute, is completely dissimilar. The California Evidence Code (§ 1235) provides that a prior inconsistent statement *is admissible* not only to impeach a witness' credibility but also to prove the truth of the matters asserted therein. In contrast, the New York statute provides that such prior inconsistent testimony is *not admissible* unless his testimony at trial tends to disprove the position of the party who called him. Perhaps Hanley lied when he testified he did not recall the crucial events at Costello's Bar. But whether he lied or told the truth, his testimony in no way tended to disprove the People's case, the prerequisite to admission of his grand jury testimony.

For the foregoing reasons I would reverse and order a new trial.

MARKEWICH and TILZER, JJ., concur with STEVENS, J. P.; CAPOZZOLI and NUNEZ, JJ., dissent in an opinion by NUNEZ, J.

Judgment, Supreme Court, New York County, rendered on February 6, 1973, affirmed.